Case number 124197, American Bonding Company v. American Contractors and Demony, Argument Not to Exceed, 15 minutes per side. Mr. Smith, you may proceed for the appellant. Mr. Smith, this is Judge Rock. Can you hear me? Yes, I hear you. Okay. Mr. Jarrett is there also. I either are, or you. You can hear me fine as well. I can, thank you. Okay, we've also got Judge Collins and Judge Scranch on the line. And many of the three of us want to ask a question. I will try to identify you as yourself, because we don't know who it is. Mr. Smith, you're on. Mr. Smith, you're going to start this gentleman, so please proceed. Okay, thank you. Good morning. My name is Frank Smith. I'm representing the interests of the Bond American Bonding Company v. ABC. I have a case of false trustee, breach of fiduciary duty, and deferring money for a purpose that was allowed. The court will know me as Dan Rarick. This court granted Eric Ranney, a former trustee of the A-Type Agency, his claim for breach of trust, fiduciary duty, and deferred money from the bluff account. He wrote a statement criticizing damages and failing account permissions on an attorney account by various sources of the court. As this is a profound case, this is the A-Type Agency's built-up fund, the bluff account, and the state of Virginia's general contract damages. However, as a matter of fact, the A-Type Agreement is assuring me that the bluff account funds will only be used for the purpose of paying bond or deferred money. I'm sorry, I'm getting a little ticked back there. I'm not going to defer to that, but I apologize. This is Judge Branch. This is Judge Branch. How do you hold? Would you confirm for me whether or not the record is clear that the only damages in question are on brochures, on premium payments? I don't think those will be damages in question. This is not a part of the case. It was part of the case for A-Type Agency. How did they measure the loss if it was not the amount of money that they paid to the brochure system? It's actually the money from the account. Premium? Premium. That's what I'm trying to get. Premium? Yes, yes. One percent of the premium was paid to the brochure account. Yes, that's correct. So all the bonds that you have to do with the value of premium payments? It's not familiar to premium payments. It's not that premium payments were paid, but it's that they should not have been approved by A-Type Agency. I think that's the reason that they stated they were approved. And there's still also, when it was made to the brochure account, there's been no accounting after the fact where A-Type Agency saved money. So they saved their premium. They stated that they saved per se. And they never really counted the money. So it was about three weeks. Twenty-nine thousand bucks was what we made to the account. Mr. Smith, this is Judge Dahl. And since the agreement refers to losses and potential losses, I know some argue that the only way they could withdraw the money was that it reached it to somebody down at the Supreme Court. But what can we look to that would restrict the language as narrowly as you argue? Well, if you look at the actual language in the paragraph 18, let's look at it in context. And see that the losses are actually tied to when a person who is livery of the bill launches it. If I hit the bill this year, it says it's created at this time. The whole paragraph all has to do with the losses. Even further to that point, the agreement is also actually – the A-Type Agency agreement is part of this. It's actually there. And when it goes to O-R-T-3905.5.1, it includes the liability that the account might have to pay for temporary deposition due to quote-unquote liability on the bond with the build-up funds proposed. In addition, those funds should have been deferred to the State Department. Not a year later, it's still $28,000, $10,000 in the account. Mr. Simpson, I want to get back to the fact of liability. If you owe money to O-R-T-A and they pay money to yours to O-R-T-A, that reduces what you owe to O-R-T-A. I understand you say that's not the way it's supposed to work, but what's the harm? Well, it's not necessarily to O-R-T-A's money. By all I said, it's not going to reduce what you receive if you owe money under a Florida settlement to O-R-T-A. I didn't see, yes. There was somebody who owed how much of those, not necessarily deferred by the Department of Law Enforcement. And it's not a good owner. Yes, yes, yes. The money that is in the trust account, also, what are you trying to say? You're going to leave an ounce of those to O-R-T-A? It's very well put. There's still money, there's still money to get there. If the state has to save the state, actually save those states money that they felt was safe to owe, that's a different thing. You worked with the state for $100,000 in the last eight to nine years. Now, the money is out by a permitted position. If they ask the substance of the agency to pay their money, not O-R-T-A, then they're going to step in as a trustee. They also own the county. At least show that the money's gone. That's their burden as a trustee. I understand the technicality, but I'm just wondering why you care so much. If what they do pay in crochet reduces what is written in crochet under a judgment that you agree is intended. I'm just trying to see what's underlying the motivation of your lawsuit. Well, it's not that we're going to have to pay today. It's not that we're going to have to pay today. It would be possible. But who would like to know? It turns out that that money eventually is owed in crochet. That's fine. We don't know whether it's actually paid in crochet. We don't know. The agency has no account. We have no interest in trusting the government. Well, if this money is properly paid in crochet in the long run, in order to reduce your obligation to crochet, if all you're asking for is an account, does that satisfy you for the purpose of this lawsuit, in terms of your client's ultimate interest? No. No, no, no. The agency doesn't really allow them to do that. I'll cut that out. Regardless, I just wanted to say thank you. Great. Thank you. If you want to agree to it, that's what it is. All right. You can agree to something that is not technically required to be done in that way in order to force their case. Oh, yeah. That's true. If you try to force them to discuss it, they refuse to stop. Okay. I see your time is up. If you want to reserve your screen for the follow-up, that's one of the follow-up questions. This is Judge. Yes, this is Judge. Can I ask one other question? You're in bankruptcy, is that correct? No, that's not correct. Did you receive permission? Am I misunderstanding the record that you received permission from the bankruptcy court to pursue this litigation outside of the bankruptcy? Yes. I came out of bankruptcy. I apologize. I don't know what the question is. The bankruptcy ended as it came out of bankruptcy. Okay. So you are not, you are not, so any of this money into the bankruptcy debt? Is the bankruptcy claim? I don't know if the bankruptcy claim always has to be to get an officer to file it. There's no bankruptcy. There's no bankruptcy now. That's correct. Is anybody discharged? Is anybody discharged from bankruptcy? You know, I'm not sure why this is what it is. Okay. And I think Judge Frank's question is not why, but how is this because, you know, whether it was a discharge from bankruptcy settlement, whether it was something from bankruptcy settlement, I think that's her question. And what you answer then is no, I'm not sure. And that question is. I apologize. I apologize. I apologize. I don't know for sure. I don't see where that starts. Okay. And you don't know whether the trustee abandoned this particular litigation or not. Did the trustee abandon this particular litigation? Yes, because if you filed this lawsuit, there's no possibility to recover money that Judge Frank did and was a part of the bankruptcy debate in 2007, then all of that would have been under the office of the trustee. But that's not my question. What I want to ask is, with respect to this language that we're talking about and that you are clinging to and relying on, if, and you say that this report is fair and they got it wrong, they just confirmed the language. But if it is the case that the language is ambiguous, should that be construed against you rather than against ACI? Would that be in your case an offense? Well, no. Okay. Thank you, Your Honor. Thank you. Thank you. Mr. Jarrett. Good morning, Your Honor. My name is Anthony Jarrett. I'm on behalf of the affiliate American Contractors Identity Corporation. Your Honor, I think one phrase comes up in the MRS debate, no bonding, no bonding. This fact fails the American bond dispute. Trust claims. It fails to be a bonding obligation under the agency agreement. With the insurance company Roche, and Your Honor's criticism, we are bonding the dispute in fact. In fact, if the Senate for a $350,000 judgment had afforded this report regarding a failure, specifically, the American bond agency agency agreement, in these three ways. Number one, Capitalism is going to thrive. ACI is not a party to that. That is correct, Your Honor. Number one, it fails to do that. It failed in letter twice. American bonding cannot do that under the agency agreement. Number two, it incurred a potential liability in excess of $1.8 million in that final agency agreement. And most importantly, and this is really important, American bonding fails to pay the old bond forfeiture in various hotel counties, as stated by every placement agency representative under oath in the court badge. We attach that information to our motion for summary judgment regarding our restricted product line. Capitalism is going to thrive, but you're not arguing that the dollars were a result of forfeiture. Is that correct? That is correct, Your Honor. We think that we established part of the issue. And the fact is, as I just stated, they did not pay their government forfeiture that was supposed to get bailed. I understand that. I'm not talking about a preliminary breach or a breach from the other side. I'm asking you about what you paid, what was paid out of the budget, and wasn't that, and isn't your argument before us, that that was a contingent bond? It was for all $1.8 million, and that is what's provided under the agreement. I'm asking you about your argument about whether you can place evidence in the record that you say that the bus counter resulted from forfeiture. It's my argument, looking at your statement, that your argument is that the bus counter was for premium payment. Is that correct? Your Honor, that was part of our argument. We certainly posted and highlighted that regarding the premium payment. But again, Your Honor, the ultimate evidence at the cross-court level as attached to our preliminary judgment is that an error of five days also has been built on the bus counter. Yes, we're talking parallel, we're talking cross-court. I'm asking you, how was the payment calculated? When money came out of that bus counter, did somebody say, there's no forfeiture. Here's money out of the bus counter. Or did somebody calculate, oh, it's not a premium. So, here's money out of the bus counter. Yes, Your Honor, I hear your point. We did calculate the fact that here's money where somebody gets a premium, absolutely, but there is not a premium. And that's the basis of the amount of money that was collected from the bus counter. Is that correct? Primarily, yes. That's correct. All right. So, we have three failures. We have three failures by a third spot. And this is important because we know that the failure approximation is going to drive the total value of each of these. Okay, Your Honor. What do you mean by that, Your Honor? Well, you said, if you list those three, out of a quarter, out of a quarter, out of a total, right? Because they're holding that other count. Right? Perfect. That's not... You know, you can do those, you can do those, you can do those. No. You can't do those. What was it? Crochet. But, actually, the price of both parties, you can hear it now,  is the surety for those bill bonds for crochet in the state of Ohio. So, as the trustee of this trust, Mr. O'Connor, ACIC was supposed to be adequately protected in addition to crochet under an agreement between crochet and ACIC. So, there are, of course, a trilateral relationship here. There was an agreement between American Fondant and crochet. You all understand that. American Fondant was to prevent bail bonds for crochet. It didn't do so. But, in addition to that, of course, American Fondant was to do this. ACIC was to show that it was necessary in the state of Ohio for the American Fondant batch. So, you know, I don't think you can say, well, just because the ACIC was a part of the batch, it doesn't impact the pure world. It does. That's the relationship. That's right. And I understand both of you. Thank you. © transcript Emily Beynon ®